UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 19-10447-RGS

| | | |
|---|---|---|
| UNITED STATES | \| | TELEPHONE OR VIDEO HEARING |
| | \| | REQUESTED |
| V | \| | |
| | \| | |
| JAMES DE LA CRUZ | \| | |

## DEFENDANT'S EMERGENCY MOTION FOR IMMEDIATE RELEASE FROM CUSTODY BASED ON CHANGED CIRCUMSTANCES - COVID-19

Defendant James De La Cruz moves this Court to reconsider its prior detention order and immediately release him because of changed circumstances, namely, the heightened risk of contracting coronavirus disease 2019 (COVID-19), while in confinement. See United States v. Angiulo, 755 F.2d 969, 972-73 (1st Cir. 1985) (holding that the magistrate who issues a detention order has inherent authority to reconsider that order).

Currently, Massachusetts is experiencing a COVID-19 outbreak via community transmission. Governor Baker declared a State of Emergency on March 10, 2020. Massachusetts Executive Order No. 591.[1]  As of March 16th, Massachusetts had 197 confirmed coronavirus cases.[2] Twelve days earlier, there were just 3.[3] The governor has ordered all schools to close until at least April 7 and has banned public gatherings of more

---

[1]  Available at https://www.mass.gov/executive-orders/no-591-declaration-of-a-state-of-emergency-to-respond-to-covid-19.

[2] *Walsh orders construction shutdown in Boston as tally of cases statewide hits 197*, The Boston Globe (March 16, 2020).

[3] *Little coronavirus testing in Mass. so far as cases hit 138*, The Boston Globe (March 14, 2020).

than twenty-five people.[4]  In Rhode Island, where the Defendant is incarcerated, Governor Raimondo also declared an emergency, closed schools and child care centers, banned public gatherings of more than 25 people, and banned dine-in service at restaurants.[5]  This Court issued General Orders 20-1 and 20-2 on Thursday March 12, limiting access to the courthouse and canceling jury trials.  The next day, this Court issued General Order 20-3, rescheduling grand jury proceedings, and the State Supreme Judicial Court issued its own standing orders mirroring the language of this Court's 20-1 and 20-2.  Late in the evening of Friday the 13th, the State trial courts issued detailed orders canceling nearly all non-emergency proceedings, only to order a complete closure on Sunday night.  On Monday, March 16, this Court issued General Orders 20-4, 20-5, and 20-6, canceling nearly all non-liberty-determinative proceedings and directing that hearings go forward by remote participation when it is necessary to hold them at all.  And at 12:30 this afternoon, the Supreme Judicial Court issued a new standing order tolling all statutes of limitations, extending all deadlines, and extending the expiration of all court orders until April 21, while limiting admission to State courthouses only to strictly necessary parties to emergency hearings that cannot be conducted remotely.[6]  Emergency orders modifying the fundaments of everday living in America have been issued and modified so rapidly over the past week that it has been nearly a full-time job to keep up with them.

---

[4] *Baker closes schools, restricts restaurants, bans gatherings over 25 as community spread of coronavirus seen in 7 Mass. counties,* The Boston Globe (March 15, 2020).

[5] See https://health.ri.gov/diseases/ncov2019/; Rhode Island Executive Order 20-4, https://health.ri.gov/publications/exec-orders/ExecOrder20-04.pdf; 20-2 https://health.ri.gov/publications/exec-orders/ExecOrder20-02.pdf

[6]https://www.mass.gov/supreme-judicial-court-rules/supreme-judicial-court-order-limiting-in-person-appearances-in-state

These measures have been taken because "social distancing" is critical to slowing the spread of COVID-19.[7] "But behind bars, some of the most basic disease prevention measures are against the rules or simply impossible. Separating sick people from well people to prevent the disease from spreading can be nearly impossible in prison . . . People in prisons and jails live every minute of the day in close proximity to each other."[8]

In addition, "[t]he incarcerated and justice-involved populations contain a number of groups that may be particularly vulnerable to COVID-19."[9] In order to reduce conditions of crowding and mitigate the harm to vulnerable populations, it is especially critical that those who can be released are released. COVID-19 is particularly dangerous to older people and people with pre-existing medical conditions including, but not limited to, high blood pressure, heart disease, lung disease, cancer, diabetes, HIV and/or other autoimmune diseases.[10]

---

[7] The Justice Collaborative, *Explainer: Prisons and Jails are Particularly Vulnerable to COVID-19 Outbreaks*, available at: https://thejusticecollaborative.com/wp-content/uploads/2020/03/TJCVulnerabilityofPrisonsandJailstoCOVID19Explainer.pdf.

[8] *Id*.

[9] Prison Policy Initiative, *No need to wait for pandemics: The public health case for criminal justice reform* (March 6, 2020), available at: https://www.prisonpolicy.org/blog/2020/03/06/pandemic/.

[10] Both the World Health Organization and the Centers for Disease Control report that older people and those with underlying medical conditions like cardiovascular disease, diabetes, chronic respiratory disease, and cancer are at greater risk. See World Health Organization Coronavirus Disease 2019 (COVID-19)  Situation Report – 51, available at https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200311-sitrep-51-covid-19.pdf,  and Centers for Disease Control and Prevention, People at Risk for Serious Illness from COVID-19, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/high-risk-complications.html.

Other jurisdictions have already taken steps to reduce their jail populations. The Islamic Republic of Iran, not known as a bastion of liberty, has released 85,000 prisoners.[11] Cuyahoga County, OH and Los Angeles County, CA have begun mass releases of incarcerated people.[12] Only this morning, 31 elected prosecutors, including the District Attorneys of Suffolk and Berkshire Counties and the Northwest District of Massachusetts, released a statement calling for the reduction of jail populations due to COVID-19.[13] Meanwhile, in New York, Nassau County on Long Island reported the first case of COVID-19 in a correctional setting that has been disclosed to the public.[14]

With confirmed cases in Massachusetts that indicate community spread, we must take every necessary action to protect vulnerable populations and the community at large. The circumstances that existed when the defendant was ordered detained have now changed. There is a pandemic that poses a direct risk to the defendant that is far greater if he continues to be detained during this public health crisis.

Reducing the number of people in detention facilities is an urgent matter in this time of national emergency. People residing in close living quarters, including prisons, are at particular risk of contracting COVID-19. [15] Releasing people who are held unnecessarily is

---

[11] https://www.aljazeera.com/news/2020/03/hard-hit-iran-frees-prisoners-coronavirus-outbreak-200317110516495.html

[12] https://www.cnn.com/2020/03/16/us/inmates-released-jail-coronavirus-trnd/index.html

[13] https://fairandjustprosecution.org/wp-content/uploads/2020/03/Coronavirus-Release-FINAL.pdf

[14] https://abc7ny.com/6019279/

[15] See Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State and Local Leaders from Public Health and Legal Experts in the United States, March 2, 2020, available at https://law.yale.edu/sites/default/files/area/center/ghjp/documents/final_covid-

critical both to minimize the number of people who face that risk and to reduce the density of detention facility populations. Moreover, people who contract the virus will need urgent medical care and the jails, houses of corrections, and prisons do not have adequate medical care capacity to deal with a spread of the virus within the institution.  Everyone, including correctional employees, will be in extreme danger if the virus spreads within a detention facility.  People regularly cycle in and out of jails and prisons and people who work in them leave and return daily.[16] Viruses of all kinds have multiple entry points, and those that enter tend to spread fast. Outbreaks of the flu regularly occur in jails, and during the H1N1 epidemic in 2009, many jails and prisons dealt with a high number of cases.

When coronavirus suddenly exploded in China's prisons, there were reports of more than 500 cases spreading across four facilities; those affected included both correctional officers and incarcerated people.[17]  Increasing the population of a detention facility could present a "danger to the community"—the staff and inmates inside the jail—by potentially bringing the virus into the facility.

At the time of this Court's detention hearing, the opioid epidemic was this country's greatest public health concern, but has been drastically overshadowed by COVID-19, which threatens to overwhelm our nation's health care system if we do not take drastic measures

---

19 letter from public health and legal experts.pdf

[16] See Pandemic Influenza and Jail Facilities and Populations, Am. J. Public Health, 2009 October 99 for a discussion of how the cyclical nature of incarceration increases the risk of exposure during pandemics, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4504367/.

[17] See https://www.cnbc.com/2020/02/21/coronavirus-china-says-two-prisons-reported-nearly-250-cases.html

to limit its spread. [18]  The balance of harms now weighs heavily in favor of the defendant's

release.

Respectfully submitted,
JAMES DE LA CRUZ
By his counsel:

/s/ Andrew W Piltser Cowan

_____
Andrew W Piltser Cowan BBO# 673511
PiltserCowan Law LLC
25 Bay State Rd Suite 2
Boston MA 02215
Tel/Fax: 617-245-1976
Dated: March 17, 2020                andy@andrewcowanlaw.com

CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion was served on Assistant US Attorney Stephen
Hassinck, attorney for the United States, via the CM/ECF Notice of Electronic Filing this 17th
day of March, 2020.

/s/ Andrew W Piltser Cowan

---

[18] In New York, nearly 1 in 5 people who contract the disease require hospital care, and
Governor Cuomo does not believe the state has enough hospital beds.
https://www.cnbc.com/2020/03/17/new-york-state-coronavirus-cases-soar-to-more-than-1300-
hospitalizing-19percent.html

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO. 19-10447-RGS

| | | |
|---|---|---|
| UNITED STATES | \| | TELEPHONE OR VIDEO HEARING |
| | \| | REQUESTED |
| V | \| | |
| | \| | |
| JAMES DE LA CRUZ | \| | |

AFFIDAVIT OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION FOR IMMEDIATE
RELEASE FROM CUSTODY BASED ON CHANGED CIRCUMSTANCES - COVID-19

Andrew W Piltser Cowan deposes and states the following under the pains and penalties of perjury:

1. I am counsel to the defendant in this case.

2. On March 17, 2020, I checked the website for the Wyatt Detention Facility to see what information they had posted about their COVID-19 mitigation plan.  There was no information posted, nor has the US Marshals Service posted any information on their website about the health of detainees in their custody.

3. I telephoned the Wyatt facility at 1:08 PM, identified myself as an attorney representing an inmate, and asked what the facility's COVID-19 mitigation plan was.  The officer I spoke to, who did not identify himself by name, was only aware of restrictions on non-contact visits.  He was not able to identify any other specific action the facility had taken or planned to mitigate the spread of disease there.

4. The officer then told me he would transfer me to a supervisor who could speak to the issue in more detail.  I was transferred to a voicemail.  I left a detailed message

identifying myself and asking for information about the facility's COVID-19 plan.  As of this writing I have not received a return call.

Subscribed and sworn to under the pains and penalties of perjury this 17th day of March, 2020


/s/ Andrew W Piltser Cowan
_____